UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BLAZE CHAUS, L.L.C.** | * | **CIVIL ACTION NO. 2015-cv-00552** |
| **versus** | * | **SECTION: I (AFRICK)** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | * | **MAG. 4 (ROBY)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Blaze Chaus, LLC, who respectfully files the underlying Response in Opposition to Defendant's Motion for Partial Summary Judgment, and respectfully, represents as follows:

INTRODUCTION

On August 18, 2015, State Farm filed the underlying Motion for Summary Judgment stating that because Blaze Chaus has not submitted any documentation regarding the loss of any business personal property and/or loss of income as a result of the water damage, these claims, along with any bad faith claim premised on the same, should be dismissed. (See Memorandum in Support of Motion for Partial Summary Judgment, Doc. 51-1 at 6.) This request is premised on State Farm's assertion that Blaze Chaus -- which does not operate a business nor own any business personal property -- is the only named insured. However, Plaintiff asserts that the policy itself is ambiguous regarding what it intended to insure, and that State Farm's interpretation would lead to an absurd result, such as Dr. Burkenstock paying premiums for nearly seven (7) years at the time of the incident for business personal property, loss of income, and other medical practice-related coverages that she had no hope of seeing any return on should the need arise. The underlying policy was titled and rated a "Medical Office Policy", and the clear intent

expressed throughout the underwriting file shows that the mutual intent of both State Farm and Dr. Burkenstock was to insure her medical equipment and any potential business income loss. Thus, although Blaze Chaus may not have submitted documentation regarding the loss of business personal property and income, the intended insured, Dr. Burkenstock through the "dba" Blaze Chaus, has submitted ample and voluminous documentation regarding these losses, and as such, State Farm's Motion for Summary Judgment must be denied.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Blaze Chaus, LLC ("Plaintiff" or "Blaze Chaus") was and is the owner of property located at 2040 North Causeway Blvd., Mandeville, Louisiana. The building located at 2040 North Causeway, Blvd., Mandeville, LA (the "building") houses Kelly G. Burkenstock, M.D., APMC (the "medical practice"), Rejuvenation, LLC ("Rejuvenation"), and a medical spa, Azure Spa, Inc. ("Azure Spa"). Dr. Kelly Burkenstock ("Dr. Burkenstock") is an internist physician, and the sole owner and proprietor of all four entities, which are serviced or supervised by Dr. Burkenstock. More specifically, Blaze Chaus owns the building that houses Dr. Burkenstock's medical practice and other health-related businesses. Kelly G. Burkenstock, M.D., APMC is Dr. Burkenstock's full-service medical practice. Rejuvenation offers health, skin and lazer treatment, operates out of the same office space as Dr. Burkenstock's medical practice, and is serviced entirely by Dr. Burkenstock. And Azure Spa is Dr. Burkenstock's medical spa.

Since 2006, for almost ten years, Dr. Burkenstock's medical practice and other health-related businesses have been insured by policy no. 98-EZ2174-3 from Defendant, State Farm Fire and Casualty Company ("State Farm"). This policy is identified and rated as a "Medical Office Policy", and Dr. Burkenstock has paid premiums accordingly. On or about December 24, 2013, the building, furniture, medical equipment and lazer machines located at 2040 North

Causeway Blvd. sustained severe water damage after an extensive water pipe breakage occurred. At the time of the incident, Plaintiff had in place the above-mentioned insurance policy, which listed "Blaze Chaus" as the named insured. This "Medical Office Policy" provided for $444,600 in coverage for the building and $114,400 for coverage in business personal property, as well as any loss of income and extra expense for up to twelve (12) months.[1] Although Blaze Chaus is the name of the entity that owns the building that houses Dr. Burkenstock's medical practice and other health-related businesses, all of the medical equipment utilized in her daily operations is owned by her medical practice and other health-related businesses. It is obvious from both the plain language of the "medical office policy" and the intention expressed throughout the underwriting file that Dr. Burkenstock and State Farm mutually intended to insure the medical equipment, the building, and the businesses with the underlying policy. The underlying policy is not just a building owner's policy.

Turning first to the original application for insurance submitted on behalf of Dr. Burkenstock, the insured is listed as "Dr. Kelly Burkenstock D/B/A Blaze Chaus LLC" at the top of every page.[2] The application goes on to list several additional categories of options and endorsements, including a "Physicians and Surgeons Endorsement", which the application indicates is "automatically included on office policies for medical professionals." Not only does Dr. Burkenstock's application have a check mark in the box next to the "Physicians and Surgeons Endorsement", but the check mark is also circled.[3] Then, in the space on the last page of the application that asks the applicant to "Fully describe all of the applicant's: …Business

---

[1]  See Declarations for Medical Office Policy for Blaze Chaus, LLC, policy no. 98-EZ-2174-3, bate stamp Business Office Pol 0003, 0006, attached as Exhibit "A".

[2]  See Application for Insurance, bate stamp Bus Office Policy Docs 51-53, attached as Exhibit "B".

[3]  See *id.* at 52.

3

activities on and off premises", Dr. Burkenstock's business activities are described as "Internal Medicine Doctor."[4] Clearly the application reflects that State Farm intended to cover Dr. Burkenstock's medical practice and mistakenly believed that Blaze Chaus was a "dba" nickname.

Turning next to the contents of the underwriting file itself, the Xactware estimate performed on behalf of Dr. Burkenstock during the underwriting process on or about October 16, 2006 identifies the owner of the building as "Kelly Burkenstock". And the underwriting file reflects that the building was an "Office-Medical".[5] In fact throughout the underwriting file, the owner of the building is consistently identified as "Kelly Burkenstock"; the insured is consistently referred to as "Kelly Burkenstock DBA Blaze Chaus LLC", and for purposes of exposures and liability the building and insured is consistently described as a "medical office".[6] This State Farm policy was never intended to be merely a building owner's policy. Indeed, the Operations Narrative Report drafted following a survey dated March 22, 2013, just a little more than 9 months prior to the incident, states:

> This is a physician's office for Dr. Kelly Burkenstock. The business operates as a spa named "Azure Spa". A website is available on http://www.skinbodyhealth.com/index.html. There are medical procedures and services offered at this business such as botox, injections, tattoo removal, etc.
>
> The facility is two stories. The Coverage B is mainly for the medical equipment, office equipment, and the furnishings in the procedure rooms, and in the lobby. The Coverage A is for the building, which is in good condition and well maintained. It's evident that the landscaping is maintained on a consistent basis. There are no noteworthy concerns presented by the condition of the building or

---

[4] See. *Id.* at 53.

[5] See Xactware Estimate U7F3-Q3AA-8 (v.1), bate stamp Bus Office Policy Docs 54, attached as Exhibit "C".

[6] See excerpts from redacted underwriting file, bate stamp Bus Office Policy Docs 45-49, attached as *in globo* Exhibit "D".

the surrounding premises. There are no recommendations for improvement at this time.[7]

Thus, as evidenced by the original application for insurance and underwriting file, this policy was demonstratively not just a building owner's policy, but instead a policy intended to cover Dr. Burkenstock and her various solely owned entities housed within the building, including the medical practice and other health-related businesses. Furthermore, as demonstrated by not only State Farm's claims file and Dr. Burkenstock response to State Farm's discovery requests, the intended insured has submitted ample documentation regarding her business personal property and loss of income claim.[8] In fact, State Farm adjusters were there during the repair and evaluation of much of Dr. Burkenstock's medical equipment, and Dr. Burkenstock has submitted documentation evidencing close to $550,000 in damaged equipment and business personal property.[9] Lastly, Dr. Burkenstock relies on her accountant, Phil Moss, C.P.A. to maintain her financial records, and Mr. Moss has produced thousands of pages of financial records to State Farm regarding Dr. Burkenstock's income and income related losses.[10] Thus, State Farm's Motion to Dismiss the business person property and loss of income claim must be denied.

## **LAW AND ARGUMENT**

The underlying policy itself is ambiguous. It was rated as a "Medical Office Policy" and provided for additional medical-practice related coverages, such as "physicians and surgeons

---

[7] See *id.*, bates stamped Bus Office Policy Docs 35-44.

[8] See excerpt from State Farm's Claims file, attached as *in globo* Exhibit "E", and excerpt from Plaintiff's responses to Defendant's discovery request, attached as Exhibit "F".

[9] See excerpt from State Farm's Calims file, Ex. E, Business Office bates stamp 133.

[10] See Transmittal Letter of July 13, 2015 and July 20, 2015, attached as Exhibit "G".

5

equipment", business personal property and loss of income coverage,[11] but identifies only "Blaze Chaus, LLC", which does not operate a medical office or own any medical equipment, as the insured in direct contradiction to the intent reflected in the original application for insurance and underwriting file.

      Furthermore, to interpret this policy as not providing coverage for either the income lost by the medical practice and other health-related business or the equipment owned by the medical practice and other health-related entities would lead to an absurd result, i.e. that Plaintiff, Blaze Chaus, procured and paid premiums for $114,000 in coverage for business personal property, specifically her medical and laser equipment, without actually "owning" any business personal property, as well as for twelve (12) months of lost income and extra expense without actually having the ability to lose much income.[12] ***Any doubt in coverage should be resolved in favor of the insured***.

      Additionally, Plaintiff avers that the underlying policy of insurance should be reformed to reflect the mutual intent of the parties, which was to insure Dr. Kelly Burkenstock, including the medical practice, the other health-related business, and the medical equipment, pursuant to the original 2006 application for insurance, the clear intent and language reflected by the underwriting file, and the language of the "Medical Office Policy" itself.

      Lastly, because the intended insured was "Dr. Kelly Burkenstock d/b/a Blaze Chaus, LLC" and Dr. Burkenstock has submitted ample evidence regarding her business personal property claim and loss of income claim, State Farm's Motion for Summary Judgment should be denied.

---

[11]     See Exhibit A, Business Office Pol bates stamp 0004-0005.

[12]     Plaintiff does not submit that she is limited to the $114,000 limit of liability for business personal property, as she believes the coverage amount that she obtained for her medical equipment was much higher than that.

I.  **Not only is the policy of insurance itself ambiguous, but to interpret it as State Farm suggests would lead to absurd consequences.**

Under Louisiana law, ordinary contract principles govern the interpretation of an insurance policy. *See Halphen v. Borja*, 961 So. 2d 1201, 1204 (La. App. 1st Cir. 2007); *Gaylord Container Corporation v. CNA Insurance Companies*, 807 So. 2d 864, 871 (La. App. 1st Cir. 2001); *Smith v. Matthews*, 611 So. 2d 1377, 1379 (La. 1993). The judicial responsibility when interpreting a policy is to determine the parties' common intent. La. Civ. Code Ann. art. 2045; *Halphen*, 961 So. 2d at 1204; *Gaylord Container Corporation*, 807 So. 2d at 871; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code. Ann. art. 2046; *see also Halphen*, 961 So. 2d at 1204; *Gaylord Container Corporation*, 807 So. 2d at 871.

If there is ambiguity in an insurance policy, it must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. See LSA-C.C. art. 2050; *see also Halphen*, 961 So. 2d at 1205. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the insured. *See* LSA-C.C. art. 2056; *see also Halphen*, 961 So. 2d at 1204. Even if the words are fairly explicit, when a literal interpretation will produce absurd consequences, the court may consider all pertinent facts and circumstances, including the parties' own conclusion of the instrument's meaning, rather than adhere to a forced meaning of the terms used." *Id.*; *see also Ins. Office of Am., L.L.C. ex rel. S R M Properties, L.L.C. v. H I Insulation, L.L.C.*, 462 Fed. Appx. 434, 437 (5th Cir. 2012).

The starting point for interpreting the underlying policy of insurance is the policy itself. For the last nine (9) years Dr. Burkenstock has paid premiums for an insurance policy that was rated as a "Medical Office Policy" and provided for $114,000 in business personal property coverage and twelve (12) months of loss of income and extra expense coverage, as well as other medical practice related coverages such as "physicians and surgeons equipment". The only named insured is "Blaze Chaus", which is an LLC completely owned by Dr. Burkenstock for the sole purpose of holding real estate. The building that Blaze Chaus owns, which was insured by the underlying State Farm policy, housed Dr. Burkenstock's medical practice and other health-related business. However, Blaze Chaus does not operate a medical office, nor does it own any medical equipment. Instead it owns a building that houses a medical practice and health-related businesses which in turn own medical equipment. If Dr. Burkenstock and State Farm did not intent to cover her medical practice and other health-related business, there would be no reason for Blaze Chaus to obtain and pay additional premiums for business personal property coverage or loss of income and extra expense or any of the other "Medical Office" related coverages.

As such, the policy of insurance itself is ambiguous regarding who exactly it sought to insure, since the policy is rated as a "Medical Office Policy", provides for business personal property and loss of income coverage, but only lists what the original 2006 insurance application identified as a "dba" for Dr. Kelly Burkenstock's medical practice, Blaze Chaus, which neither owns any business personal property, nor does it run an incoming generating medical office. ***<u>Why would State Farm rate this as a Medical Office Policy and charge premiums for business personal property, loss of income, and other medical-office related coverages, if the insured was not a medical office, did not run a medical practice, and did not own any business personal property?</u>***

Not only is the policy ambiguous, but interpreting the policy to deny coverage for lost income and damaged medical equipment would also result in absurd consequences and a gross injustice, i.e. the procurement of coverage and payment of premiums for lost income that could not be generated and business personal property that does not exist, since Blaze Chaus does not run a medical practice nor own any business personal property. Thus, the court should next look to the language of the original 2006 underwriting file itself, which reflects State Farm and Dr. Burkenstock's mutual intent to insure her medical practice, her other health-related businesses, her office building, **AND** the medical equipment owned by Dr. Burkenstock's businesses.

Turning again to the underwriting file, the Xactware estimate performed on behalf of Dr. Burkenstock during the underwriting process on or about October 16, 2006 identifies the owner of the building as "Kelly Burkenstock". The building is consistently described as a "medical office." The application for insurance (1) clearly identifies the insured as "Dr. Kelly Burkenstock D/B/A Blaze Chaus LLC", (2) describes Dr. Burkenstock d/b/a Blaze Chaus, LLC's business activities as "Internal Medicine Doctor", and (3) checks the additional "Physicians and Surgeons Endorsement", which is "automatically included on office policies for medical professionals", for inclusion in the final policy checked. Furthermore, the designation of the insured as "Kelly Burkenstock DBA Blaze Chaus LLC" is repeated throughout the underwriting file. The only logical explanation for this is that Dr. Burkenstock sought and obtained coverage for herself, her building, and her health-related businesses housed in her building, and the agent who submitted her application and the underwriter who authored her policy and help set the premiums mistakenly believed that her medical practice was doing business as the nickname "Blaze Chaus". Thus, it follows that every policy that was written in 2006 through the current year 2015 uses the term Blaze Chaus as a "dba" for the medical practices of Dr. Kelly Burkenstock.

The clearest demonstration of this mutual intent comes from an Operations Narrative Report drafted by State Farm just a little more than nine (9) months prior to the December 24, 2013 incident, which states:

> ***This is a physician's office for Dr. Kelly Burkenstock***. The business operates as a spa named "Azure Spa". A website is available on http://www.skinbodyhealth.com/index.html. There are medical procedures and services offered at this business such as botox, injections, tattoo removal, etc.
>
> The facility is two stories. ***The Coverage B is mainly for the medical equipment, office equipment, and the furnishings in the procedure rooms, and in the lobby***. The Coverage A is for the building, which is in good condition and well maintained.[13]

This policy was not just a building owner's policy. ***<u>Instead this policy was for "a physician's office for Dr. Kelly Burkenstock."</u>*** State Farm may not now deny coverage based on this technicality and reap the benefits of an error that State Farm was responsible for making, i.e. identifying the insured as "Blaze Chaus" when clearly the insured was "Dr. Kelly Burkenstock". As the policy itself declares in bold letter across the top of nearly every page of the declarations sheet, this is a "Medical Office Policy".

> II.     **The underlying policy of insurance should be reformed to reflect the clear and mutual intent of both State Farm and Blaze Chaus.**

Plaintiff additionally moves this Court to reform the contract to reflect the parties' true intent: That the insured was and is Dr. Kelly Burkenstock. Like other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties. *Samuels v. State Farm Mut. Auto. Ins. Co.*, 2006-0034 (La. 10/17/06, 6-7); 939 So.2d 1235, 1240 (citing William Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise: Insurance Law and Practice, Vol. 15, § 5, p. 14 (2nd Ed.1996) (stating that even unambiguous terms may be reformed if they do not reflect the actual

---

[13]     See *id.*, bates stamped Bus Office Policy Docs 35-44 (emphasis added).

mutual agreement of the parties); *Earl Williams Const. Co. v. Thornton & Brooks, Inc.*, 501 So. 2d 1037, 1039 (La. App. 2nd Cir.), writ denied, 504 So. 2d 881 (La.1987)); *see also Ins. Office of Am., L.L.C. ex rel. S R M Properties, L.L.C. v. H I Insulation, L.L.C.*, 462 Fed. Appx. 434, 437 (5th Cir. 2012); *Fruge v. Amerisure Mutual Insurance Company*, 663 F. 3d 743, 748 (5th Cir. 2011); *Grand Acadian, Inc. v. Fluor Corp.*, 2009 WL 1650076, *4 (W.D. La. 2009); *N. Vo., Inc. v. Atlantic Cas. Ins. Co.*, 2008 WL 687188, *3 (E.D. La. 2008). "In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy. Parole evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous." *Id.* The burden is on the one seeking the reformation to prove the error…." *Id.* (citing *Ferguson v. Belcher and Son*, 230 La. 422, 88 So.2d 806 (1956)). Where the reformed policy would not substantially affect the risk assumed by the insurer, the party seeking reformation must prove a mutual error by a preponderance of the evidence *Ins. Office of Am., L.L.C. ex rel. S R M Properties, L.L.C. v. H I Insulation, L.L.C.*, 462 Fed. Appx. 434, 437 (5th Cir. 2012) (citing *Bonadona v. Guccione*, 362 So. 2d 740 (La. 1978)). When an insurance policy within the actual intention of the parties is issued for the protection of an entity other than the named insured, the insurer may be held to have afforded such protection by the policy, or to be estopped to deny it; and the policy may be equitably reformed to show the true intention of the parties in this regard." *Wade T. Verges Const. Co. v. American Empire Surplus Lines Insurance Company*, 2008 WL 4889718, *3 (E.D. La. 2008); *see also Pacific Ins. Co. v. Quarles Drilling Corp.*, 320 F. 2d 1087, 1089 (5th Cir. 1988) (quoting *Phoenix Indem. Co. v. Marquette Cas. Co.*, 320 F. 2d 486, 492-93 (5th Cir. 1963) as stating: "Reformation may 'alter the amount of insurance, the term and duration of the risk, ***the property or interest covered by the policy, or the name of the person involved and the ownership of the property***." (emphasis added)).

11

Furthermore, under Louisiana law, policies should be construed to effect, not deny, coverage. *Id.* (citing *Yount v. Maisano*, 627 So. 2d 148, 151 (La. 1993)).

In the instant case, although State Farm mistakenly identified the insured solely as "Blaze Chaus", it rated the policy as a "Medical Office Policy" and provide for additional medical-office related coverages, and Plaintiff is merely seeking to reform the policy to express this intent -- that this is a policy of insurance for Dr. Burkenstock's medical office and health-related businesses. This mistake will not result in a substantially different or greater risk than that expressed by the written policy, and in fact, reformation would not change any of the coverages identified in the policy at all, but merely correct who the intended named insured was. State Farm has in no way relied on this mistake prior to attempting to deny coverage based on this error. This is obvious from the Operations Narrative Report drafted by State Farm in March of 2013, which by their own admission states: "***This is a physician's office for Dr. Kelly Burkenstock*. … *The Coverage B is mainly for the medical equipment, office equipment, and the furnishings in the procedure rooms, and in the lobby***. The Coverage A is for the building….[14]

To deny Dr. Burkenstock coverage for her medical equipment and lost income on the basis that Blaze Chaus, who did not operate a medical office or own any medical equipment, did not submit any supporting documentation, even though Dr. Burkenstock has submitted ample supporting documentation, is not only absurd and disingenuous, but likely an act of bad faith. Dr. Burkenstock's office housed several state of the art medical lasers among other medical machinery and equipment. A large portion of this equipment was damaged due to the pipe leak, and yet, Dr. Burkenstock has yet to receive a single penny for her covered damage equipment. Further, State Farm had actual knowledge that Coverage B was intended to insure her "medical

---

[14] See *id.*, bates stamped Bus Office Policy Docs 35-44 (emphasis added).

equipment, office equipment, and the furnishings in the procedure rooms, and in the lobby" as evidenced by their own underwriting file and survey.

Dr. Burkenstock has and always will be the intended insured, and the policy of insurance should be reformed to reflect that mutual intention, and State Farm should not benefit from their mistaken identification of Blaze Chaus as the nickname for Dr. Burkenstock's medical practice.

**WHEREFORE**, premises considered, Plaintiff, Blaze Chaus LLC, prays that this court DENY plaintiff's Motion to Amend and reform the policy of insurance to reflect the parties' true intentions.

Respectfully Submitted,

/s/Michael C. Darnell
**Michael C. Darnell, Bar No. 4554**
**Edwin R. Murray, Bar No. 17069**
**MURRAY, DARNELL & ASSOCIATES, LLC**
1540 N. Broad St.
New Orleans, LA 70119
Telephone: (504) 945-0042
Facsimile: (504) 942-5968

AND

**Feingerts & Kelly, PLC**
**Bruce L. Feingerts, Bar No. 5499**
1540 N. Broad St.
New Orleans, LA 70119
Telephone: (504) 568-1515
Facsimile: (504) 568-1521

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record by electronically filing the foregoing with the Clerk of Court using the

CM/ECF system which will send notice of electronic filing to counsel of record, this 25th day of August, 2015.

s/Michael C. Darnell