UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BLAZE CHAUS, LLC**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 15-552**

**STATE FARM FIRE AND CASUALTY**                        **SECTION I**
**COMPANY**

### ORDER AND REASONS

The Court has pending before it objections[1] filed by plaintiff, Blaze Chaus LLC ("Blaze") to an order[2] by the U.S. Magistrate Judge, as well as motions[3] filed by defendant, State Farm Fire and Casualty Company ("State Farm"), all of which turn on a common issue: which entities are entitled to coverage pursuant to the insurance policy at issue in this matter. For the following reasons, State Farm's motions are granted in part and denied in part, and the objections to the U.S. Magistrate Judge's order are dismissed as moot.

### BACKGROUND

This insurance dispute arises out of water damage to the building at 2040 North Causeway Boulevard in Mandeville, Louisiana ("the building"). Blaze owns the building which, for purposes of this decision, is occupied by two non-party corporate entities which provide health care services: (1) Dr. Kelly G. Burkenstock, M.D., APMC and (2) Azure Spa, Inc. It is undisputed that Dr. Kelly

---

[1] R. Doc. No. 49.
[2] R. Doc. No. 43.
[3] R. Doc. Nos. 51, 68.

1

G. Burkenstock is the sole owner of all three entities.[4]

In 2006, an application for commercial insurance was submitted by "Dr. Kelly G. Burkenstock," "D/B/A Blaze Chaus LLC."[5] The application requested a "Physicians and Surgeons Endorsement (automatically included on office policies for medical professionals)" and further reflects the "[b]usiness activities" of the applicant as "INTERNAL MEDICINE DOCTOR."[6] A property estimate prepared in 2006 described the building as "Office – Medical" and listed the owner as Kelly Burkenstock, without mentioning Blaze.[7]

As a result of the application, State Farm issued Medical Office Policy No. 98-EZ-2174-3 in 2006, and such policy was renewed annually through 2013.[8] It is undisputed that the only entity identified in the policy as the named insured relevant for the purposes of this case is Blaze Chaus LLC.[9] At the time of the incident, the policy had Coverage A limits of $444,600 with respect to the building, and Coverage B limits of $114,400 with respect to the business's personal property.[10] The policy reflected coverage for "Physicians And Surgeons Equipment" in the amount of the "Coverage B Limit."[11] The policy also included coverage for actual loss of income and extra expense sustained

---

[4] The briefing indicates that Dr. Burkenstock also operated another entity, Rejuvenation LLC. R. Doc. No. 57, at 2. However, the motion for leave to amend did not seek to add Rejuvenation LLC as a plaintiff, R. Doc. No. 20-2, and there is no indication that Rejuvenation pursues any recovery pursuant to the policy.

[5] R. Doc. No. 57-2, at 11. The Court notes another portion of the application stating that the "named applicant is" "LLC" rather than an "Individual," "Partnership," or "Corporation." R. Doc. No. 57-2, at 11.

[6] R. Doc. No. 57-2, at 12, 13.

[7] R. Doc. No. 57-2, at 14.

[8] R. Doc. No. 57-2, at 2.

[9] R. Doc. No. 51-4, at 5. The policy reflects that the "Ernest M. Memorial Convention Center" and "Paramount Shows Inc." are additional insureds, R. Doc. No. 51-4, at 10, but neither party contends that such designations are pertinent to the losses claimed in this case.

[10] R. Doc. No. 57-2, at 3.

[11] R. Doc. No. 57-2, at 5.

for twelve months.[12]

In a State Farm property report dated April 1, 2013, prepared before the incident giving rise to the insurance claims at issue, the "Operations Narrative Report" section reflects the following:

> This is a physician's office for Dr. Kelly Burkenstock. The business operates as a spa named "Azure Spa". . . . There are medical procedures and services offered at this business such as botox, injections, tattoo removal, etc.
> The facility is two stories. ***The coverage B is mainly for the medical equipment, office equipment, and the furnishings in the procedure rooms, and in the lobby.*** The Coverage A is for the building, which is in good condition and well maintained. . . .[13]

Blaze alleges that the insured building and its insured contents were damaged on or about December 24, 2015, by water from a burst pipe located in a ceiling.[14] It is undisputed that, pursuant to the policy, State Farm paid Blaze some amounts for structural damage, but it has not paid any amounts for business personal property or business income losses. As the parties discovered (apparently only once this lawsuit was filed), Blaze Chaus LLC owns the insured building, but the contents were owned by Dr. Kelly G. Burkenstock, M.D., APMC and Azure Spa, Inc. The only alleged business income losses were incurred by those entities and not Blaze.

Blaze timely filed a motion to amend its complaint to add Dr. Kelly G. Burkenstock, M.D., APMC and Azure Spa, Inc. as plaintiffs.[15] The U.S. Magistrate Judge denied the motion for leave to amend as futile, concluding that only the named insured, Blaze, could recover pursuant to the policy.[16]

---

[12] R. Doc. No. 57-2, at 6.
[13] R. Doc. No. 57-2, at 21 (emphasis added).
[14] R. Doc. No. 1-1, at 3.
[15] R. Doc. No. 20.
[16] R. Doc. No. 43.

**LAW & ANALYSIS**

Several pending motions depend on a common question presented in different procedural postures: whether recovery pursuant to the Medical Office Policy is limited to the named insured, Blaze, or whether coverage is also provided to Azure Spa, Inc. and Dr. Kelly G. Burkenstock, M.D., APMC. Blaze objects to the U.S. Magistrate Judge's order denying its timely motion to amend the complaint to add those separate Burkenstock-owned entities as plaintiffs. State Farm, on the other hand, moves for partial summary judgment with respect to the unavailability of recovery for business personal property damage and business income losses suffered by any entity other than Blaze, the sole named insured. The Court will first address the issues of insurance policy interpretation and reformation raised by State Farm's motion for partial summary judgment, the resolution of which moots the objections to the U.S. Magistrate Judge's order.

**A.     Interpretation or Reformation of the Medical Office Policy**

   **1)     Standard for Motions for Summary Judgment**

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### 2)    The Insurance Policy is Not Ambiguous

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also id.* ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.") (citing La. Civ. Code art. 2045). "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations

is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tx. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So.2d 577, 580 (La. 2003). A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

If there is any doubt or ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict construction" that requires that any doubt or ambiguity in an insurance contract be construed in favor of coverage to the insured and against the insurer who issued the policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994); *see also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); *accord Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 668 (La.1997); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 741 (La.1994). If an ambiguity exists, a court should "construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.'" *Louisiana Ins.*

*Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267, 269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989) ("Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.").

"In Louisiana, a plaintiff may sue under an insurance policy when he is a named insured, additional insured, or third-party beneficiary of the contract." *Lee v. Safeco Ins. Co. of Am.*, No. 08-1100, 2008 WL 2622997, at *2 (E.D. La. July 2, 2008). State Farm contends that the policy unambiguously names only one insured, Blaze, and that only Blaze is covered by the policy.[17] Blaze contends that the policy "itself is ambiguous regarding who exactly it sought to insure" because it is a Medical Office Policy with coverage for business personal property and loss of income although Blaze, itself, had no business personal property or loss of income and extra expense.[18]

The Court finds as a matter of law that the insurance policy is not ambiguous as to the identity of the named insured. The language of the policy designating Blaze Chaus LLC as the named insured is "clear and explicit" and subject to no other interpretation. La. Civ. Code art. 2046. Accordingly, only Blaze, the named insured in the unambiguous policy, can seek to enforce the policy as it is currently written. *E.g.*, *Axis Surplus Ins. Co. v. Third Millenium Ins. & Fin. Servs.*, 781

---

[17]Blaze does not contend that any other entity is an "additional insured" pursuant to the policy language, or that any other entity is a third-party beneficiary of the policy.

[18]R. Doc. No. 57, at 8. Blaze also argues, for essentially the same reasons, that interpreting the policy to cover only Blaze would lead to an absurd result, namely that premiums were paid for coverages that Blaze could never collect. R. Doc. No. 57, at 9. In *Insurance Office of America, L.L.C. ex rel. SRM Properties, L.L.C. v. H I Insulation, L.L.C.*, a case factually different than the case before this Court, the Fifth Circuit held that it would be absurd to enforce the plain language of an insurance policy to cover two business entities that had never existed. *See* 462 F. App'x 434, 437 (5th Cir. 2012). The Court concludes that Blaze's absurdity argument is better addressed through the framework of reformation of the policy, as will be addressed below.

F. Supp. 2d 320, 324 (E.D. La. Feb. 15, 2011); *Weir v. Allstate Ins. Co.*, No. 07-55, 2008 WL 4657805, at *2 (E.D. La. Oct. 20, 2008); *Continental Ins. Co. v. Emerald Star Casino Natchez, L.L.C.*, No. 07-3862, 2008 WL 1884046, at *5 (E.D. La. Apr. 25, 2008).[19]

### 3)      There is a Genuine Issue of Material Fact Regarding the Intent of the Parties

"As with other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 748 (5th Cir. 2011). "In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy." *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d 1235, 1240 (La. 2006). A "mistake is mutual if the contract has been written in terms which violate the understanding of both parties; that is, if it appears that both have done what neither intended." *Hall Ponderosa, LLC v. Petrohawk Properties, L.P.*, 90 So. 3d 512, 518 (La. App. 3 Cir. 2012). "Louisiana law is clear: a party may present extrinsic evidence to prove mutual mistake, even when the language of the contract is not ambiguous." *Fruge*, 663 F.3d at 748. "To reform an instrument, there must be clear proof of the antecedent agreement as well as the error in committing it to writing." *Id.* (internal quotation marks omitted). "A determination of mutual error is essentially a question of fact . . . ." *Teche Realty & Inv. Co. v. Morrow*, 673 So. 2d 1145, 1148 (La. App. 3 Cir. 1996).[20]

---

[19]The Court notes that in *Axis*, *Weir*, and *Emerald Star*, reformation of the insurance policy on the basis of mutual mistake was not at issue.

[20]A policy may also be reformed if the policy does not reflect the intent of the parties due to "negligent, mistaken or fraudulent conduct of the agent who issues the policy." *Hebert v. Breaux*, 285 So. 2d 829, 830 (La. App. 1 Cir. 1973); *accord Americas Ins. Co. v. S. Aero Corp.*, No. 86-3894, 1988 WL 40257, at *2 (E.D. La. Apr. 25, 1988). "If the agent knows of the true intention of the policyholder as to the coverage desired, the insurance company is bound by the agent's knowledge, and the policy erroneously issued will be reformed so as to conform to the original intention." *Hebert v. Breaux*, 285 So. 2d at 830. The present summary judgment

8

The burden of proof on a party seeking to reform an insurance policy depends on the nature of the reformation. If the reformation does "not substantially affect the risk assumed by the insurer," then the "normal burden of proof by a preponderance of the evidence" applies. *Samuels*, 939 So. 2d at 1240. When a party seeks "to prove that the insurer had insured a substantially different and greater risk than that expressed by the written policy," then the mutual mistake justifying reformation must be proved by clear and convincing evidence. *See id.*

State Farm does not address the applicable burden of proof. Because the proposed reformation goes to which parties are entitled to coverage but not to the scope or amount of coverage, the Court concludes that the preponderance standard applies. *See* 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise § 1:5 ("For example, clear and convincing proof of mutual error would be necessary to delete an express coverage exclusion, but only a preponderance of the evidence would be required to establish mutual error as to the identity of the named insured.").

In support of reformation, Blaze argues that the policy should "reflect the parties' true intent: That the insured was and is Dr. Kelly Burkenstock."[21] In response, State Farm contends that any mistake in coverage "is solely unilateral on the part of Dr. Burkenstock" because Dr. Burkenstock could have reviewed the policy and taken steps to verify that all entities she intended to insure were listed as named insureds.[22]

As it is unambiguously written, the policy insures only Blaze. The question is, therefore,

---

evidence does not reflect a clear request to add to the policy either Kelly G. Burkenstock, M.D., APMC, or Azure Spa, Inc., by name, or a corresponding clear failure to add them as named insureds to the policy.

[21] R. Doc. No. 49, at 10; R. Doc. No. 57, at 10.
[22] R. Doc. No. 70, at 8.

whether "it appears that both [parties] have done what neither intended." *Hall Ponderosa, LLC*, 90 So. 3d at 518. The Court concludes that, on the basis of the available summary judgment record and the justifiable inferences such record supports, there is a genuine issue of material fact as to the intent of the parties.

"Parol[] evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous." *Samuels*, 939 So. 2d at 1240. The insurance policy application was submitted in the name of "Dr. Kelly Burkenstock" "D/B/A Blaze Chaus, LLC." The application described the business activities at the insured building as "INTERNAL MEDICINE DOCTOR," and requested the "Physicians and Surgeons Endorsement."[23] A contemporaneous property estimate described the building as "Office – Medical" and listed the owner as Kelly Burkenstock, not Blaze. State Farm then issued a Medical Office Policy, which included coverage for business income losses and business personal property damage, including coverage for "Physicians And Surgeons Equipment." This evidence, which State Farm does not discuss in its reply brief,[24] could support a finding by a preponderance of the evidence that Dr. Burkenstock and State Farm intended that the insurance policy cover Dr. Burkenstock's medical practice as well as the separate entity constituting her practice. Such a joint understanding tends to be supported by evidence suggesting that in 2013, State Farm inspected the insured building, State Farm was aware that it was "a physician's office for Dr. Kelly Burkenstock" and that the "business operate[d] as a spa," and that State Farm believed at that time that the contents were covered by Coverage B of the Medical Office Policy.[25]

---

[23] R. Doc. No. 57-2, at 11-13.
[24] R. Doc. No. 70.
[25] R. Doc. No. 57-2, at 21.

State Farm cites only one case addressing reformation.[26] In *Lightfoot v. Hartford Fire Insurance Co.*, another section of this court concluded that one entity out of a "conglomerate" of related business entities could not collect business interruption losses pursuant to an insurance policy which only named a different entity as the insured. *See* No. 07-4833, slip op. at 1-3, 10 (E.D. La. Oct. 13, 2010). In that case, the party asserting coverage did not raise reformation as a theory of recovery, but the court nonetheless concluded that there was no fact question as to a mutual mistake and that reformation was therefore inappropriate. *See id.* at 12. *Lightfood* is a fact-intensive decision and it is not analogous to the situation presented in this case: issuance of a Medical Office Policy covering an entity which did not operate a medical office.

Essentially, State Farm places the blame for any error squarely on Dr. Burkenstock as the only person who knew that Blaze owned only the building and who could have taken steps to ensure that the correct entities had been named as insureds. State Farm is certainly right, but it does not cite any cases refusing to reform a policy to correct a *mutual* mistake simply because one of the parties could have corrected the mistake. Furthermore, State Farm's briefing is largely silent as to its own intent in issuing the Medical Office Policy. Accordingly, on the state of the summary judgment record as it presently stands, the Court concludes that there is a genuine issue of material fact regarding the intent of the parties to the insurance contract which could support reformation of the policy and the addition of another named insured.

The Court concludes, however, that such fact question does not extend to whether the parties mutually intended to insure Azure Spa, Inc. Reformation on the basis of mutual mistake requires that the mistake be "shared by both parties to the instrument *at the time of reducing their agreement to*

---

[26]R. Doc. No. 70, at 7-8.

*writing*." *Hall Ponderosa, LLC*, 90 So. 3d at 518 (emphasis added). The undisputed record reflects that Azure Spa, Inc., did not exist as an entity until 2009, after the policy was initially issued.[27] Accordingly, the parties could not have agreed in 2006 that a not-yet-existing entity should have been a named insured.

As a result, State Farm's motion for partial summary judgment should be granted with respect to the recovery of any losses incurred by Azure Spa, Inc. and denied with respect to the recovery of any losses incurred by Kelly G. Burkenstock, M.D., APMC.[28] Furthermore, because there is a fact question as to the intent of the parties with respect to Kelly G. Burkenstock, M.D., APMC, leave should be granted to amend the complaint to add Kelly G. Burkenstock, M.D., APMC as a plaintiff.

Plaintiff shall file an amended complaint adding Kelly G. Burkenstock, M.D., APMC as a plaintiff on or before Tuesday, October 6, 2015. Such amended complaint shall not add any additional defendants or factual allegations which are the subject of the pending second motion to amend the complaint.[29] In light of this resolution of State Farm's motion for partial summary judgment, the objections to the U.S. Magistrate Judge's order are moot.[30]

---

[27]R. Doc. No. 30-1, at 5.
[28]State Farm also requested partial summary judgment in its favor as to any bad faith claims based upon business personal property or loss of income, on the narrow basis that any such bad faith claim requires an underlying claim for coverage. R. Doc. No. 51-1, at 6. While such argument is rejected in this order and reasons because of a genuine issue of material fact relative to the underlying coverage claim by Kelly G. Burkenstock, M.D., APMC, the Court will address by separate order and reasons State Farm's broader motion for partial summary judgment as to all bad faith claims. R. Doc. No. 63.
[29]R. Doc. No. 108.
[30]The Court notes, however, that Blaze did not present to the U.S. Magistrate Judge all of the exhibits submitted in opposition to State Farm's motion for partial summary judgment, nor did Blaze brief the reformation issue in any meaningful way. Accordingly, the Court would be hard pressed to find that the order denying the motion for leave to amend was clearly erroneous

Finally, State Farm's *in limine* motion[31] to exclude evidence or testimony as to State Farm agents "for any purpose at trial including whether as to reformation of the policy or the alleged acts of negligence . . . in procuring or servicing the policy at issue" should be denied, subject to State Farm's ability to object to specific portions of such testimony. Questions related to the intent of the parties will be presented to the jury in connection with the reformation issue.

## CONCLUSION

**IT IS ORDERED** that State Farm's motion for partial summary judgment is **GRANTED** with respect to any recovery for losses suffered by Azure Spa, Inc., but **DENIED** with respect to any recovery for losses suffered by Kelly G. Burkenstock, M.D., APMC.

**IT IS FURTHER ORDERED** that on or before **Tuesday, October 6, 2015**, Blaze shall file an amended complaint adding Kelly G. Burkenstock, M.D., APMC, as a plaintiff.

**IT IS FURTHER ORDERED** that Blaze's objections to the U.S. Magistrate Judge's order are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that State Farm's motion to exclude evidence and testimony regarding "plaintiff's insurance agent negligence and related issues" is **DENIED**, subject to State Farm's ability to object to specific portions of such testimony.

New Orleans, Louisiana, October 5, 2015.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

or contrary to law.
[31]R. Doc. No. 68.