UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BLAZE CHAUS, LLC                                                    CIVIL ACTION

VERSUS                                                             NO. 15-552

STATE FARM FIRE AND CASUALTY                                       SECTION I
COMPANY

## ORDER AND REASONS

The Court has pending before it a motion[1] filed by defendant,  State Farm Fire and Casualty

Company ("State Farm"), for partial summary judgment as to mold claims and the State Farm mold

exclusion. Plaintiff, Blaze Chaus LLC ("Blaze"), opposes the motion.[2] For the following reasons,

State Farm's motion is granted in part and denied in part.

## BACKGROUND

This insurance dispute arises out of water damage to the building at 2040 North Causeway

Boulevard in Mandeville, Louisiana ("the building") on or about December 24, 2013. State Farm

issued a Medical Office Policy of insurance which named Blaze as the named insured. Blaze pursues

additional amounts pursuant to the structural coverage of the policy.

## LAW AND ANALYSIS

A.      Standard for Motion for Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and

disclosure materials on file, and any affidavits, the court determines there is no genuine issue of

---

[1]R. Doc. No. 66.
[2]R. Doc. No. 92.

material fact.  *See* Fed. R. Civ. P. 56.  "[A] party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion and identifying those portions

of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not

produce evidence negating the existence of material fact, but need only point out the absence of

evidence supporting the other party's case.  *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th

Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the

nonmoving party must come forward with specific facts showing that there is a genuine issue of

material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the

material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla'

of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  The party responding to the motion for summary judgment may not rest upon the pleadings,

but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence,

however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's]

favor."  *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**B.      Interpretation of Insurance Policies**

"An insurance policy is a contract between the parties and should be construed by using the

general rules of interpretation of contracts set forth in the Louisiana Civil Code."  *Cadwallader v.*

*Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also id.* ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.") (citing La. Civ. Code art. 2045). "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tx. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So.2d 577, 580 (La. 2003). A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

If there is any doubt or ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict construction" that requires that any doubt or ambiguity in an insurance

contract be construed in favor of coverage to the insured and against the insurer who issued the

policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994); *see*

*also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a

contract must be interpreted against the party who furnished its text."); *accord Valentine v.*

*Bonneville Ins. Co.*, 691 So.2d 665, 668 (La.1997); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736,

741 (La.1994).  If an ambiguity exists, a court should "construe the policy 'to fulfill the reasonable

expectations of the parties in the light of the customs and usages of the industry.'" *Louisiana Ins.*

*Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267,

269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989) ("Ambiguity will

also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the

clause at the time the insurance contract was entered.").

"Under Louisiana law, the insured must prove that the claim asserted is covered by his

policy." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009). "Once he has done this,

the insurer has the burden of demonstrating that the damage at issue is excluded from coverage." *Id.*

**C.     Analysis**

The insurance policy at issue covers "accidental direct physical loss to Covered Property

unless the loss is" "[e]xcluded in SECTION I – EXCLUSIONS."[3] There is no dispute that the

December 2013, water leak is a direct physical loss to covered property. Blaze's retained engineer,

Larry Townsend, inspected the building and conducted mold testing.[4] Townsend found mold in the

---

[3]R. Doc. No. 66-4, at 15.
[4]R. Doc. No. 66-5, at 1-3.

hair cutting/shampoo room ("shampoo room").[5] He opines that "[a] water leak in the attic caused water to leak into the ceilings, floors, and walls of the first and second floor of the building" and that "[n]ot all of the water damaged and mold contaminated gypboard was removed from the building following the water leak."[6]

State Farm contends that mold in the shampoo room is not covered by the policy. First, the policy excludes mold,[7] but the mold exclusion does not apply if the mold "is the result of a Covered Cause of Loss."[8] According to State Farm, there is no genuine issue of material fact at issue as the mold in the shampoo room was actually caused by a subsequent, unrelated air-conditioning leak which is not the subject of this lawsuit.[9] Furthermore, State Farm contends that the alleged air-conditioning leak falls within a policy exclusion for losses caused by continuous seepage or leakage of water.[10] According to State Farm, the shampoo room mold is not "the result of a Covered Cause of Loss" and the mold exclusion applies and bars coverage of the shampoo room mold.[11]

Second, and in the alternative, State Farm contends that there is no genuine issue of material fact at issue as any mold in the shampoo room was the result of the deficient remediation performed

---

[5]State Farm and State Farm's expert use the terms "shampoo room" and "haircutting room" interchangeably. R. Doc. No. 66-1, at 2; R. Doc. No. 66-5, at 47. Blaze does not dispute this terminology.

[6]R. Doc. No. 66-5, at 5.

[7]R. Doc. No. 66-4, at 17.

[8]R. Doc. No. 66-4, at 55.

[9]R. Doc. No. 66-1, at 10.

[10]R. Doc. No. 66-1, at 10. The policy excludes coverage for "loss which would not have occurred in the absence of" "[c]ontinuous or repeated seepage, discharge or leakage of water, or the presence or condensation of humidity, moisture, or vapor, that occurs over a period of 14 days or more." R. Doc. No. 66-4, at 16, 19.

[11]R. Doc. No. 66-1, at 10-11.

by Blaze's contractor and the policy excludes coverage for losses caused by faulty workmanship.[12]

Having reviewed Townsend's report, his supplemental report, and his deposition, as well as the reports of State Farm's experts, Weeks[13] and LaGrange,[14] the Court finds that there are genuine issues of material fact as to the cause of mold in the shampoo room which preclude summary judgment in State Farm's favor. Certainly, the record reflects some uncertainty regarding the evolution of Townsend's opinion as to the cause of the mold in the shampoo room. Although it appears that Townsend concedes that the subsequent unrelated air-conditioning leak could have caused mold in the shampoo room,[15] in his supplemental report he nonetheless appears to maintain his opinion that "water damaged and mold contaminated gypboard was [not] removed from the

---

[12]R. Doc. No. 66-1, at 11-13. The policy states that:

3.  We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:
    . . .
    c.  Work
        Faulty, inadequate or defective:
        (1)  Planning, zoning, development, surveying, siting;
        (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        (3)  Materials used in repair, construction, renovation or remodeling; or
        (4)  Maintenance;
        of part or all of any property (including land, structures or improvement of any kind) on or off the described premises.
    But if accidental direct physical loss results from items 3.a, 3.b., or 3.c., we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in SECTION I of this coverage form.

R. Doc. No. 66-4, at 19.
[13]R. Doc. No. 66-5, at 40-51.
[14]R. Doc. No. 66-5, at 53-56.
[15]R. Doc. No. 66-5, at 30-31.

building following the water leak."[16] State Farm had the opportunity to depose Townsend and fully investigate his opinions, but the deposition transcript does not reflect any unambiguous statement by Townsend disavowing his opinion that the covered water leak caused the mold in the shampoo room. Drawing all reasonable inferences in favor of Blaze, the record does not support summary judgment in State Farm's favor as to the cause of, or coverage for, the mold in the shampoo room.

Furthermore, although State Farm asserts that Townsend's testimony and supplemental report establish that any mold falls within the faulty workmanship exclusion, the summary judgment record and Townsend's opinions are ambiguous as to this causation issue as well. The single case cited by State Farm enforcing a faulty workmanship exclusion did not address a mold exclusion and it is not apposite to the facts presented in this motion. *See Cedar Ridge, LLC v. Landmark Am. Ins. Co.*, 13-672, 2014 WL 295068 (E.D. La. Jan. 27, 2014) (Africk, J.). The factual questions related to the cause of the mold in the shampoo room are better developed at trial and may be revisited, if appropriate, through a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure.

State Farm is, however, entitled to summary judgment in its favor as to any other claims for mold damage. Blaze only offers summary judgment evidence of mold in the shampoo room, and not any other locations in the building.[17] Blaze's assertion in its opposition that "extensive mold testing is still needed" is no substitute for summary judgment evidence at this late date.[18] It is Blaze's burden to show a loss covered by the policy, *Dickerson*, 556 F.3d at 295, and the only genuine issue of material fact Blaze has shown as to any mold damage relates to the shampoo room.

Accordingly,

---

[16]R. Doc. No. 66-5, at 38.
[17]R. Doc. No. 66-5, at 4.
[18]R. Doc. No. 92, at 1.

**IT IS ORDERED** that State Farm's motion is **DENIED** as to mold damage in the shampoo/hair cutting room, and **GRANTED** as to any other alleged mold damage.

New Orleans, Louisiana, October 6, 2015.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**