## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

BLAZE CHAUS, LLC                                    CIVIL ACTION

VERSUS                                              NO. 15-552

STATE FARM FIRE AND CASUALTY                        SECTION I
COMPANY

### ORDER AND REASONS

The Court has pending before it a motion[1] filed by defendant, State Farm Fire and Casualty Company ("State Farm"), for partial summary judgment which plaintiff, Blaze Chaus, LLC ("Blaze"), opposes.[2] For the following reasons, State Farm's motion is granted in part and denied in part.

### BACKGROUND

This insurance dispute arises out of water damage to the building at 2040 North Causeway Boulevard in Mandeville, Louisiana ("the building"). Blaze alleges that the insured building and its insured contents were damaged on or about December 24, 2013, by water from a burst pipe located in a ceiling.[3] Blaze owns the building which, for purposes of this decision, is occupied by two non-party corporate entities which provide health care services: (1) Dr. Kelly G. Burkenstock, M.D., APMC and (2) Azure Spa, Inc. It is undisputed that Dr. Kelly G. Burkenstock is the sole owner of

---

[1]R. Doc. No. 65.
[2]R. Doc. No. 90.
[3]R. Doc. No. 1-1, at 3.

1

all three entities.[4] For the reasons set forth in the Court's prior order and reasons, there is a genuine issue of material fact as to whether the parties intended that Dr. Kelly G. Burkenstock, M.D., APMC should have been named as an insured in the policy.[5]

## LAW & ANALYSIS

### A.    Standard for Motions for Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla'

---

[4]The briefing indicates that Dr. Burkenstock also operated another entity, Rejuvenation, LLC. R. Doc. No. 57, at 2. However, the motion for leave to amend did not seek to add Rejuvenation, LLC as a plaintiff, R. Doc. No. 20-2, and there is no indication that Rejuvenation, LLC pursues any recovery pursuant to the policy.

[5]R. Doc. No. 114.

2

of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**B.      Interpretation of Insurance Policies**

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also id.* ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.") (citing La. Civ. Code art. 2045). "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tx. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So.2d 577, 580 (La. 2003). A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

If there is any doubt or ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict construction" that requires that any doubt or ambiguity in an insurance contract be construed in favor of coverage to the insured and against the insurer who issued the policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994); *see also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); *accord Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 668 (La.1997); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 741 (La.1994).  If an ambiguity exists, a court should "construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.'" *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267, 269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989) ("Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.").

"Under Louisiana law, the insured must prove that the claim asserted is covered by his

4

policy." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009). "Once he has done this,

the insurer has the burden of demonstrating that the damage at issue is excluded from coverage." *Id.*

**C.     Analysis**

State Farm, for a variety of different reasons, moves for partial summary judgment as to any

claims pursuant to "Equipment Breakdown" or "Spoilage" coverage, and for claims of loss to

computer equipment and valuable papers and records. The Court will address each argument in turn.

### 1)     Losses to Property Owned By Entities Other than Blaze

First, State Farm moves for partial summary judgment as to any claims by Blaze pursuant

to the policy's "Equipment Breakdown" coverage, loss to computer equipment, valuable papers and

records, and spoilage of medical products, on the basis that Blaze owned none of those allegedly

covered items and therefore cannot recover for such losses.[6] The Court's order and reasons[7] granting

leave to amend the complaint to add  Dr. Kelly G. Burkenstock, M.D., APMC, as a plaintiff and as

a potential named insured moots this motion as to claims by Dr. Kelly G. Burkenstock, M.D.,

APMC. Accordingly, the motion should be denied as to claims for such coverage by Kelly G.

Burkenstock, M.D., APMC, which might be viable if the policy is reformed, but granted as to claims

for such coverage by any other entity, such as Azure Spa, Inc.

### 2)     Equipment Breakdown

State Farm moves for partial summary judgment as to any claims pursuant to the "Equipment

Breakdown" extension of coverage, regardless of ownership of the purportedly covered property.

With respect to "Equipment Breakdown," in "SECTION I – EXTENSIONS OF COVERAGE" the

---

[6]R. Doc. No. 65-1, at 8-9, 11, 14.

[7]R. Doc. No. 114.

5

policy states:

> Subject to the terms and conditions applicable to SECTION I of this coverage form, the following Extensions of Coverage apply separately to each premises described in the Declarations. But the amount of insurance provided on any one described premises will not be more than the Limit Of Insurance specified in each Extension Of Coverage if a limit is included in the extension.
> . . . .
> 22.    Equipment Breakdown
> a.    You may extend the insurance provided by this coverage form to apply for direct physical loss to Covered Property caused by an "accident" to "covered equipment". The most we will pay for each covered loss under this Extension Of Coverage is the Limit Of Insurance that applies to the Covered Property, unless a specific limit is stated in the Additional Coverages below.[8]

The policy also defines "accident":

> "Accident" means direct physical loss as follows:
> a.    Mechanical breakdown, including rupture or bursting caused by centrifugal force;
> b.    Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;
> c.    Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;
> d.    Loss to steam boilers, steam pipes, steam engines or steam turbines caused by any condition or event inside such equipment;
> e.    Loss to hot water boilers or other water heating equipment, air conditioning units or refrigerating units caused by any condition or event inside such boilers or equipment.
> "Accident" does not mean any defect, programming error, programming limitation, computer virus, malicious code, loss of "electronic data", loss of access, loss of use, loss of functionality or other condition within or involving "electronic data of any kind.[9]

"'Covered equipment' means Covered Property built to operate under vacuum or pressure, other

than weight of contents, or used for the generation, transmission or utilization of energy."[10]

---

[8]R. Doc. No. 65-4, at 25.

[9]R. Doc. No. 65-4, at 32.

[10]R. Doc. No. 65-4, at 32. The policy also delineates specific categories of items which are not "covered equipment," but the parties do not rely on those categories in their briefing. R. Doc. No. 65-4, at 32-33.

6

State Farm argues that it is undisputed that the "loss to the property was a result of a water or plumbing pipe bursting in Blaze Chaus' attic," and that the "major pipe leak in the attic does not qualify as an 'accident' under the equipment breakdown coverage."[11] In response, Blaze agrees that "water was the original cause of loss," but nonetheless contends that "the claims file and record of this claim clearly reflect electrical disturbances impacted the equipment."[12] Blaze contends, with respect to damage to Dr. Burkenstock's lasers, that because the water leak affected the building's electrical system, such "electrical disturbances themselves were the trigger to this important 'additional coverage' for equipment breakdown."[13]

Blaze's argument is unpersuasive. The "Equipment Breakdown" provision plainly creates coverage for "direct physical loss to Covered Property," which loss is "*caused by an 'accident'* to 'covered equipment.'"[14] The parties agree that the loss in this case was caused by a burst pipe in the attic of the building, and Blaze does not contend that such burst pipe is an "accident" as that term is specifically defined by the policy.[15] Rather, Blaze relies on the definition of "accident" as including "Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires."[16] But as a factual matter, Blaze cites no competent record evidence of any "artificially generated electric current, including electric arcing." Indeed, the portion of the

---

[11]R. Doc. No. 65-1, at 8.

[12]R. Doc. No. 90, at 16.

[13]R. Doc. No. 90, at 16.

[14]R. Doc. No. 65-4, at 25 (emphasis added). The Court notes that no party has commented on the fact that, pursuant to the "Equipment Breakdown" provision, there is coverage for "direct physical loss" caused by an "accident," but that "accident" is also defined as "direct physical loss."

[15]R. Doc. No. 65-4, at 32.

[16]R. Doc. No. 65-4, at 32.

claims file Blaze cites states that a laser technician found "*water damage*" to the laser equipment.[17]

In short, Blaze has not demonstrated any genuine issue of material fact that any accident occurred other than the burst pipe in the attic, which event is not an "accident" triggering the "Equipment Breakdown" coverage. State Farm's motion should therefore be granted as to lack of "Equipment Breakdown" coverage.

### 3)    Spoilage

State Farm asserts that Blaze pursues $33,329.61 in insurance coverage for perishable medical products lost as a result of the water leak.[18] With respect to coverage for "Spoilage," a policy endorsement states that the insured "may extend the insurance that applies to Business Personal Property to accidental direct physical loss to 'perishable goods', caused by . . . . Power Outage, meaning a change in temperature, humidity or pressure resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control."[19] However, the "Spoilage" endorsement also adds an exclusion to such coverage, stating that the policy does "not insure for loss whether consisting of, or directly and immediately caused by . . . [t]he disconnection of any refrigerating, cooling or humidity control equipment from their source of power."[20] The "Spoilage" endorsement expressly states that "[a]ll other policy provisions apply."[21]

---

[17]R. Doc. No. 90-4, at 9 (emphasis added). Furthermore, Blaze's argument is in some tension with a commonsense reading of the policy. Pursuant to Blaze's theory, the "[a]rtificially generated electrical current" is both the damage to the lasers as well as the accident causing that damage.

[18]R. Doc. No. 65-1, at 12.

[19]R. Doc. No. 65-4, at 68.

[20]R. Doc. No. 65-4, at 68.

[21]R. Doc. No. 65-4, at 69.

At a deposition, Dr. Burkenstock stated that after the leak, light switches in the building were hot to the touch, and "[t]hings [were] flickering."[22] Because this made her "a nervous wreck," she "told everybody, 'Unplug everything. Turn on nothing.'"[23] She did not at that time move any "items that needed to be refrigerated."[24]

According to State Farm, Burkenstock's testimony that she ordered everything unplugged demonstrates that any damage to perishable items from lack of refrigeration was caused by "[t]he disconnection of any refrigerating, cooling or humidity control equipment from their source of power," which excludes coverage for those perishable items.[25] In addition, although State Farm's briefing focuses on the exclusion, State Farm also asserts that "Dr. Burkenstock's testimony is clear that the building *never lost power* after the water loss."[26] Blaze responds that there is a conflict between the "Spoilage" endorsement exclusion for disconnection of refrigeration and a different provision which requires an insured "in the event of loss to Covered Property" to "[t]ake all reasonable steps to protect the Covered Property from further damage."[27] According to Blaze, unplugging the refrigerators was a reasonable response required by the policy under the circumstances and, therefore, any conflict between the two provisions should be construed against State Farm and in favor of coverage.

Even if Blaze could show a genuine issue of material fact with respect to whether the

---

[22]R. Doc. No. 65-5, at 7, 12-13
[23]R. Doc. No. 65-5, at 13.
[24]R. Doc. No. 65-5, at 14.
[25]R. Doc. No. 65-1, at 13-14; *see also* R. Doc. No. 105, at 9 ("As State Farm's policy excludes coverage for items spoiled when there is a disconnection of refrigeration from the power source, the spoilage coverage endorsement is inapplicable.").
[26]R. Doc. No. 65-1, at 14.
[27]R. Doc. No. 65-4, at 28.

"Spoilage" coverage was triggered by the requisite "Power Outage,"[28] State Farm has established its entitlement to summary judgment as to the exclusion for disconnection of refrigeration. As explained above, the policy excludes coverage for loss to perishable goods "whether consisting of, or directly and immediately caused by . . . [t]he disconnection of any refrigerating, cooling or humidity control equipment from their source of power."[29] The undisputed record evidence demonstrates that Dr. Burkenstock ordered everything unplugged. Accordingly, any spoilage that followed was the result of an excluded cause, and the exclusion plainly applies.

The Court is not persuaded by Blaze's argument that there is any ambiguity or conflict in the policy. Certainly, the "Spoilage" endorsement states that "[a]ll other policy provisions apply,"[30] which suggests that the Spoilage endorsement should be read in conjunction with the duty to take reasonable steps to protect covered property from further damage. But Blaze's argument fails because the record is devoid of any evidence of reasonable steps Blaze took to protect *the perishable goods* from further damage. Disconnecting refrigerators might have been a reasonable step to protect the refrigerators themselves from damage, but it *caused* spoilage of the perishable goods. Blaze

---

[28]Although the parties focus on the exclusion, the Court notes the apparent lack of a genuine issue of material fact as to the antecedent question of coverage. As explained above, the "Spoilage" endorsement covers (1) "accidental direct physical loss to 'perishable goods'" (2) "caused by . . . . Power Outage, meaning a change in temperature, humidity or pressure resulting from complete or partial interruption of electrical power, either on or off the described premises," (3) "due to conditions beyond your control." R. Doc. No. 65-4, at 68. Arguably, the evidence of flickering lights could support a factual finding that there was a "partial interruption of electrical power." But the record is devoid of facts suggesting a causal connection between a partial interruption of electrical power that caused lights to flicker and the resulting spoilage to the perishable goods. To the contrary, the only conclusion supported by the record is that the spoilage was the result of Dr. Burkenstock disconnecting the refrigerator and failing to move the perishable goods.

[29]R. Doc. No. 65-4, at 68.

[30]R. Doc. No. 65-4, at 69.

simply fails to explain why its duty to protect property from loss should trump the refrigeration

disconnection exclusion when Blaze did nothing to comply with its duty to protect the perishable

goods from further damage. Therefore, the exclusion applies and State Farm is entitled to summary

judgment as there is no coverage for spoilage of the medical supplies.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that State Farm's motion for partial summary judgment is **GRANTED**

with respect to (1) claims by any entity for "Equipment Breakdown" coverage or "Spoilage"

coverage, and (2) claims by any entity other than Blaze or Kelly G. Burkenstock, M.D., APMC, for

computer equipment, valuable papers and records.

**IT IS FURTHER ORDERED** that the motion is **DENIED** with respect to claims by Blaze

or Kelly G. Burkenstock, M.D., APMC for computer equipment or valuable papers and records

coverage.

New Orleans, Louisiana, October 8, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**